*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNE FAROLL STICH | |
| Plaintiff, | Civil Action No.: 20-13811 (FLW) |
| vs. | OPINION |
| SMITH & NEPHEW, INC. | |
| Defendant. | |

**WOLFSON, Chief Judge:**

Plaintiff Anne Faroll Stich ("Plaintiff"), brings various product liability claims against defendant Smith and Nephew, Inc. ("Defendant"), alleging that she suffered injuries due to defects in a knee replacement device manufactured by Defendant. Defendant moves to dismiss Plaintiff's claims arguing that the New Jersey Product Liability Act ("NJPLA") subsumes Plaintiff's common law claims, and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. For the reasons set forth below, Defendant's motion is **GRANTED**. Plaintiff's claims for fraudulent misrepresentation (Count III), fraudulent concealment (Count IV), negligent misrepresentation (Count V), and unjust enrichment (Count VI) are dismissed with prejudice. Plaintiff's NJPLA claims (Count I), breach of the express warranty claim (Count II), and punitive damages claim (Count VII) are dismissed without prejudice and Plaintiff is given leave to amend those claims.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For the purposes of this motion, the relevant facts are derived from Plaintiff's Complaint ("Compl.") and assumed as true.

On October 17, 2017, Plaintiff underwent a total knee arthroplasty to her right knee to address her end-stage osteoarthritis. Compl. ¶¶23, 25. As part of the procedure, Plaintiff's doctor, Dr. Robert B. Grossman, used a "Smith &Nephew Total Right Knee System consisting of Smith & Nephew Journey size 2 tibia, size 2 femur, 29 patella and 15 mm Oxinum System" (the "Knee System"). *Id*. at ¶24. After the knee replacement surgery, Plaintiff allegedly began to experience severe pain and discomfort requiring a revision surgery. *Id*. at ¶¶26-27. Plaintiff purportedly suffered "injuries and loosening of the right tibia," and as a result, her doctor performed a revision surgery in order to replace the components from the Knee System. *Id*. at ¶27. The revision surgery was performed by Dr. Grossman on July 27, 2018; however, Plaintiff continued to experience pain and is currently receiving physical therapy. *Id*. at ¶¶28-29.

Plaintiff alleges that her injuries were caused by the defective Knee System and that Defendant "designed, manufactured, distributed and placed [the Knee System] into the stream of commerce." *Id*. at ¶31. Plaintiff further alleges that the Knee System was brought "to market using the 510(k) exemption not the PMA approval process."[1] *Id*. at ¶¶33-36. Plaintiff also alleges that Defendant possessed information, testing, and research regarding the loosening and failure of the Knee System. *Id*. at ¶¶35-35.

In April 2020, Plaintiff filed suit in New Jersey state court, asserting violations of the New Jersey Product Liability Act ("NJPLA") based on Defendant's alleged negligence, defective design, failure to warn, and defective manufacturing (Count I)[2], breach of an express warranty

---

[1] Presumably, Plaintiff is referring to the Federal Drug Administration's Premarket Approval process and section 510(k) of Food, Drug and Cosmetics Act.

[2] Confusingly, Count 1 of Plaintiff's Complaint asserts a violation of the NJPLA, but includes subsections specifically asserting design defect, defective manufacturing, failure to warn, negligence, and breach of implied warranty claims. Compl. ¶37-87, Count I, Subsections A-E. As explained, *infra*, the NJPLA only permits plaintiffs to allege strict liability claims for design defect,

2

(Count II), fraudulent misrepresentation (Count III), fraudulent concealment (Count IV), negligent misrepresentation (Count V), unjust enrichment (Count VI), and punitive damages (Count VII). *Id*. at ¶¶37-147. Thereafter, Defendant removed the matter to this Court and filed the instant motion to dismiss.

## II.   STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

manufacturing defect, and failure to warn. Accordingly, Plaintiff's NJPLA claim is limited to those three theories, only.

3

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within this Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the Court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of trust. *Id*. Finally, where "there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### III. <u>ANALYSIS</u>

#### A. Subsumption under the NJPLA

As a threshold issue, Defendant moves to dismiss Plaintiff's fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and unjust enrichment claims (Counts III-VI), arguing that they are subsumed under the NJPLA, as the statute provides the sole basis for relief in product liability cases. ECF No. 8, Def. Br. 6-8. Plaintiff concedes that these claims are subsumed under the NJPLA, but nonetheless, "submits that the Court should allow Plaintiff to amend the complaint to state these claims under [the NJPLA]." ECF No. 15, Pl. Br. at 4.

The NJPLA provides:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2. Moreover, the NJPLA defines "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying

4

the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1(b)(3); *see also Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 818 (D.N.J. 2019) ("'product liability action' is defined as any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty.").

As the Third Circuit has explained, the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991). "[T]he NJPLA generally subsumes common law product liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product." *Id*. Notably, "breach of implied warranty, unjust enrichment and consumer fraud claims [may be] subsumed under the NJPLA." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 704 (D.N.J. 2011) (citing N.J. Stat. Ann. § 2A:58C–1(b)(3)).

In considering "whether the NJPLA subsumes a particular claim, the court must ascertain the type of harm that a plaintiff is alleging; namely, whether the harm involves property damage or bodily injury caused by the alleged defective product, or whether the harm was solely to the product, itself." *Hindermyer*, 419 F. Supp. 3d at 818. Thus, "courts do not simply determine whether or not the victim's injury was literally 'caused by a product.'" *Id*. (quoting *New Hope Pipe Liners, LLC. v. Composites One, LCC,* No. 09-3222, 2009 WL 4284644, at *2 (D.N.J. Nov. 30, 2009)). Instead, "courts tend to look at the essence of the claims and decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action." *Id*. (internal quotation marks omitted) (quoting *New Hope Pipe Liners*, 2009 WL 4284644 at *2).

Here, Plaintiff's alleged harm involves personal injuries, and pain and suffering stemming from Plaintiff's use of the Knee System. Thus, the essence of all Plaintiff's clams, at their core, is

5

personal injuries caused by an allegedly defective product. Accordingly, I agree with the parties that Plaintiff's common law claims for unjust enrichment, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation are subsumed under the statute, and those claims are dismissed with prejudice; Plaintiff's express warranty claim is expressly exempted from the NJPLA and thus, Plaintiff may pursue that claim. Having found that Plaintiff's common law claims are subsumed under the NJPLA, I, now, address the sufficiency of Plaintiff's remaining claims: the NJPLA claim and the breach of express warranty claim.[3]

### B. The NJPLA claims

There are three types of NJPLA claims, including: (1) design defect, (2) manufacturing defect, or (3) warnings defect. *Mendez*, 28 F. Supp. 3d at 296; *Dziewiecki v. Bakula*, 361 824 A.2d 241 (N.J. App. Div. 2003)); *see also* N.J. Stat. Ann. § 2A:58C-2. In order to establish liability for any of the three claims, a plaintiff must demonstrate that the product at issue "was not reasonably fit, suitable or safe for its intended purpose." *Cornett v. Johnson & Johnson*, 998 A.2d 543, 562 (N.J. App. Div. 2010). In that regard, a plaintiff must establish four elements: "(1) the product was defective; (2) the defect existed when the product left the hands of the defendant; (3) the defect proximately caused injuries to the plaintiff; and (4) the injured plaintiff was a reasonably foreseeable user." *Hindermyer*, 419 F. Supp. 3d at 823 (citing *Myrlak v. Port Auth. of New York & New Jersey*, 723 A.2d 45, 52 (N.J. 1999)).

Defendant moves to dismiss Plaintiff's NJPLA claims arguing that they lack specificity, as Plaintiff's Complaint merely recites the elements of an NJPLA claim. Def. Br. at 8-11; Def. Reply Br. 7-10.

---

[3] Plaintiff's request to re-plead her common law claims under the NJPLA is denied. The adequacy of these claims as currently pled is discussed below, and Plaintiff may amend under the NJPLA consistent therewith.

### i. Failure to Warn

"A manufacturer is liable for harm caused by a failure to warn if the product does not contain an adequate warning or instruction." *Sich v. Pfizer Pharm.*, No. 17-2828, 2017 WL 4407930, at *3, (D.N.J. Oct. 4, 2017) (citing N.J. Stat. Ann. § 2A:58C-4). A warning is adequate if it is "one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product." N.J. Stat. Ann. § 2A:58C–4; *Banner v. Hoffmann-La Roche Inc.*, 891 A.2d 1229, 1236 (App. Div. 2006).

Here, Plaintiff alleges that the Knee System "involves a substantial danger to Plaintiff that would not be readily recognized by the ordinary user of the [p]roduct" and "Defendant[] failed to provide adequate warnings to avoid the substantial danger." Compl. ¶¶67, 69. Plaintiff further alleges that "Defendant[] were under a duty to disclose to . . . Plaintiff and her physicians and healthcare providers, the hidden and unreasonable danger[] associated with the [Knee System's] use and of the defective design and formulation of the [p]roduct." *Id*. at ¶99. Plaintiff's conclusory allegations fall short of alleging a failure to warn claim. Critically, Plaintiff does not identify what warnings were on the Knee System, if any, or, specifically, what dangers should have been disclosed. *Tafaro v. Six Flags Great Adventure, LLC,* 2018 WL 1535289, at *3 (D.N.J. Mar. 29, 2018) (dismissing failure to warn claim where "there [we]re no allegations concerning what warning was provided, what warning would have been provided by a reasonably prudent person in the same circumstances,"). Thus, Plaintiff's failure to warn claim is dismissed without prejudice.

### ii. Design Defect

"A plaintiff may pursue a design defect claim by contending that [the product's] risk outweighs its harm, or that an alternate design exists." *Mendez*, 28 F. Supp. 3d at 297-98 (citing

7

*Schraeder v. Demilec (USA) LLC,* No. 12-6074, 2013 WL 5770670, at *2 (D.N.J. Oct. 22, 2013) ("A plaintiff must prove either that the product's risks outweighed its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm.").

Defendant argues that Plaintiff's design defect claims are inadequately pled for two reasons: 1) the Complaint "does not specify any particular problem in the design of the device," Def Br. at 8, and 2) the Complaint does not "address any of the seven risk-utility factors, or to allege that a reasonable alternative design existed, let alone to provide the requisite facts in support thereof." Def. Br. at 9.

In response, Plaintiff argues that "a plaintiff may prevail on a defect design product liability claim without alleging or proving that a reasonable alternative design for the product existed." Pl. Br. at 8. Rather, Plaintiff asserts that she is only required to show that "either that the product's risks outweighed its utility *or* that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm." *Id*. (emphasis in original)

In *Lewis v. American Cyanamid, Co.*, 715 A.2d 967, 979-80 (N.J. 1998), upon which Plaintiff relies, the New Jersey Supreme Court explained that in a design defect case, "[a] plaintiff must prove either that the product's risks outweighed its utility or that the product could have been designed in an alternative manner so as to minimize or eliminate the risk of harm." (emphasis added). The Court further explained that, "[p]laintiffs who assert that the product could have been designed more safely must prove under a risk-utility analysis the existence of an alternative design that is both practical and feasible." *Id*. "At the pleading stage, the courts in this District have, in practice, implemented this burden by observing that '[t]hough there is no per se rule that Plaintiffs must, under all circumstances, provide a reasonable alternative design,' a plaintiff must plead either that the product's risk [of harm] outweighs its [utility], or that an alternate design exists, in

8

order to state a claim for a design defect under the Product Liability–Act." *Mendez v. Shah*, 28 F. Supp. 3d at 297-98 (quoting *Schraeder,* No. 12-6074, 2013 WL 5770670, at *2). Under a "risk-utility analysis," a manufacturer is held liable "if the danger posed by the product outweighs the benefits of the way the product was designed and marketed." *Johansen v. Makita USA, Inc.*, 607 A.2d 637, 642 (N.J. 1992) When the plaintiff relies on a risk-utility theory of design defect, "[e]xcept in the rare case when the risk-utility analysis points to the appropriate result as a matter of law, the jury, not the court, ultimately resolves factual issues arising from a risk-utility analysis." *Lewis*, 715 A.2d at 979. Under an alternative design theory, "the plaintiff must [allege] the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product." *Hindermyer*, 419 F. Supp. 3d at 823-24.

Thus, Plaintiff is correct that she is not necessarily required to allege facts regarding the application of the risk-utility test at the motion to dismiss phase; rather, a plaintiff need only allege either that there was an alternative, safer design, or that risk of the chosen design outweighed its utility. Nonetheless, I find that Plaintiff has failed to sufficiently allege her design defect claim. Indeed, Plaintiff's Complaint does not specifically allege what was defective about the Knee System – a threshold requirement. The Complaint asserts, in a conclusory fashion, that "the [Knee System] was unreasonably dangerous and was also more dangerous than expected by the ordinary consumer," and injured Plaintiff. Compl. ¶ 43. This is insufficient to allege a design defect claim.[4]

---

[4] In certain limited circumstances a plaintiff may adequately allege a design defect by relying on the "consumer expectations test," which applies when "it is self-evident that the product is not reasonably suitable and safe and fails to perform, contrary to the user's reasonable expectation that it would 'safely do the jobs for which it was built.'" *McAlonan v. Tracy*, No. A-6034-07T2, 2011 WL 6125, at *6 (N.J. App. Div. Mar. 16, 2010) (quoting *O'Brien v. Muskin Corp.*, 463 A.2d 298, 304 (N.J. 1983)). Plaintiff does not expressly rely on the consumer expectations test; moreover, the consumer expectations test does not appear to be applicable in this context. Critically, the test only applies where the hazard posed by a defective design is plainly within the everyday understanding of the ordinary consumer. *See Vicente v. Johnson & Johnson*, No. 20-1584, 2020

9

*See Sich*, 2017 WL 4407930, at *2 (dismissing a design defect claim because the plaintiffs "simply alleged injury."). Moreover, Plaintiff fails to plead any facts from which the Court can reasonably infer that a practical and feasible alternative design existed that would have reduced and/or prevented the harm caused to Plaintiff. *See Hindermyer*, 419 F. Supp. 3d at 823-24 (explaining that a plaintiff must sufficiently allege "the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product"); *Greisberg v. Bos. Sci. Corp.*, No. 19-12646, 2020 WL 4435409, at *5 (D.N.J. Aug. 3, 2020) (dismissing plaintiff's NJPLA design defect claim because "plaintiff does not sufficiently allege facts indicating that the Filter's risks outweighed its utility or that the Filter could have been alternatively designed."). Accordingly, Plaintiff's design defect claim under the NJPLA is dismissed without prejudice.

### iii. Manufacturing Defect

"[A] manufacturing defect exists if a product 'deviate[s] from the design specification, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae.'" *Hindermyer*, 419 F. Supp. 2d. at 824 (quoting N.J. Stat. Ann. § 2A:58C-1(a)). In determining whether a product contains a manufacturing defect, "the 'product may be measured against the same product as manufactured according to the manufacturer's standards.'" *Id.* (quoting *Mendez*, 28 F. Supp. 3d at 298). If the

---

WL 7586907, at *10 (D.N.J. Dec. 21, 2020) (finding that consumer expectations test was inapplicable to medical device because "it is unlikely an ordinary consumer would know how safely such system could be made to perform in all foreseeable situations."); *McAlonan*, No. A-6034-07T2, 2011 WL 6125, at *(finding that consumer expectations test was inapplicable to airbag system because "it was unlikely an ordinary consumer would know what to expect or how safely an airbag system could be made to perform in all foreseeable situations, including the type of collision at issue here."); *Suter v. San Angelo Foundry & Mach. C*o., 406 A.2d 140, 150 (N.J. 1979) (consumer expectation test applies where defect is self-evident, "like a bicycle whose brakes [do] not hold because of an improper design"). Plaintiff has not argued – nor would I find – that the Knee System, a complex medical device, satisfies that requirement.

10

product in question fails to conform to those standards, "or other units of the same kind," then there exists a manufacturing defect. *Id*. (quoting *Mendez*, 28 F. Supp. 3d at 298). Under New Jersey law, the plaintiff need not plead the nature or etiology of the manufacturing defect with scientific precision. *Vicente*, No. 20-1584, 2020 WL 7586907, at *11. "Rather, because the evidence of a flaw in the manufacturing process is uniquely within the knowledge and control of the manufacturer, '[p]roof that a product is not fit for its intended purposes 'requires only proof ... that 'something was wrong' with the product.'" *Id*. (quoting *Myrlak,* 723 A.2d 52).

Here, Defendant argues that Plaintiff's manufacturing defect claim is insufficiently pled because she has not "alleged[d] facts to indicate that this particular implant deviated from the manufacturer's specifications or otherwise identical units," or "allege[d] facts to indicate how any specific manufacturing defect caused Ms. Stich's purported injuries, as required." *Id.* at 10-11.

Plaintiff asserts that, at the pleading stage, she is not required to identify a specific defect, and may prove her manufacturing defect through either circumstantial evidence or expert testimony at trial. Pl. Br. at 9-10. In Plaintiff's view, the manufacturing defect claim is adequately pled because she specifically alleges that the Knee System was defective due to the increased "likelihood of needing subsequent surgery, or the likelihood of tibia loosening and failure of the product, and/or the need for extensive debridement of the entire joint space due to loosening." *Id*. at 10-11.

While Plaintiff is not required to allege the precise nature of a manufacturing defect in order to survive a motion to dismiss, she must allege some facts indicating that the particular Knee System installed by Plaintiff's doctor deviated from the manufacturer's specifications or otherwise identical units. *See Hindermyer*, 419 F. Supp. 3d at 827 (dismissing manufacturing defect claim because the plaintiff failed to identify "even in general terms, a particular error or mishap in the manufacturing process that caused her VenaTech Filter to deviate from Defendants' own

11

standards, nor [did] she contend that her device failed to conform to other identical units"); *Dingler v. Am. Med. Sys., Inc.*, No. 19-8672, 2019 WL 6310057, at *2 (D.N.J. Nov. 25, 2019) (dismissing manufacturing defect claim because the plaintiff alleged only that the products "caused adverse reactions and did not perform their intended purposes" but did "not allege any standard -- be it a design specification, formulae, or performance of the manufacturer, or an identical unit manufactured to the same manufacturing specifications or formulae -- from which the Products deviated"); *Sich*, 2017 WL 4407930, at *3 (dismissing manufacturing defect clam because the plaintiff failed to explain "how the drug differed from the requisite standard or how it was allegedly defective"); *Delaney v. Stryker Orthopaedics*, No. 08-3210, 2009 WL 564243, at *6 (D.N.J. Mar. 5, 2009) (dismissing manufacturing defect claim because the complaint did not identify how the product at issue deviated from the manufacturing process approved by the FDA and did not assert facts "to support the bald allegation" that the device fractured because of a manufacturing defect). Plaintiff has not identified specifically how the Knee System deviated from the manufacturer's specifications, and seemingly relies solely on the fact that she was injured as indicia of a manufacturing defect. However, "[t]he mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." *Hindermyer*, 419 F. Supp. 3d at 827. Accordingly, Plaintiff's manufacturing defect claim is dismissed without prejudice.

### C. The Breach of Warranty Claim

To state a claim for breach of express warranty under New Jersey law, a plaintiff must allege the following three elements: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder*, 792 F. Supp. 2d at 721. To create an express

12

warrantee, the seller's "guarantees of future performance should be specific." *See Herbstman v. Eastman Kodak Co.,* 342 A.2d 181, 187 (N.J. 1975). Critically, "statements that are nothing more than mere puffery are not considered specific enough to create an express warranty." *Snyder*, 792 F. Supp. 2d at 721. However, the seller is not required to "use formal words such as 'warrant' or 'guarantee' or have a specific intention to make a warranty." *In re Avandia Mktg. Sales Pracs. & Prod. Liab. Litig.,* 588 F. App'x 171, 175 (3d Cir. 2014) (quoting N.J. Stat. Ann. § 12A:2–313).

Here, Plaintiff alleges that Defendant

> through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisements, expressly warranted that their Product was safe and effective and fit for use by consumers, was of merchantable quality, did not create the risk of or produce dangerous side effects, including, but not limited to, severe pain and surgery, and was adequately tested and fit for its intended use.

Compl. ¶ 88. The Complaint further alleges that Defendant represented to Plaintiff and her physicians that the "Product did not carry the risk of injuries such as those suffered by plaintiff and other similarly situated patients," and that Plaintiff, her physicians, and other members of the medical community purportedly relied on Defendant's express warranties. *Id*. at 130, 92-93.

Courts in this District routinely dismiss express warranty claims where the plaintiff fails to allege the actual language or source of any alleged warranty. *See Barrett v. Tri-Coast Pharmacy, Inc.,* No. 18-14872, 2021 WL 486894, at *10 (D.N.J. Feb. 10, 2021) (dismissing plaintiff's breach of warranty claim where plaintiff alleged that Defendants expressly warranted that the pharmaceutical and prescription drug material ... was safe and appropriate for its intended application," but did not identify specific affirmations); *Parker v. Howmedica Osteonics Corp.*, No. 07-02400, 2008 WL 141628, at *6 (D.N.J. Jan. 14, 2008) (dismissing plaintiff's breach of warranty claim where plaintiff alleges that express warranty was created by "publicly made written and verbal assurances of safety," "press releases and dissemination via the media of uniform

13

promotional information," and "verbal assurances made by Defendant's consumer relations personnel to the public"); *Simmons v. Stryker Corp.*, No. 08–3451, 2008 WL 4936982, at *2, (D.N.J. Nov. 17, 2008) ("Plaintiff's breach of warranty claim is devoid of any 'factual matter' to support the existence of an express warranty. Rather, there is simply a conclusory recitation of the elements of the claim. Plaintiff has alleged no facts to suggest that an express warranty existed.").

Here, Plaintiff has failed to identify any specific affirmations or promises to support a claim for breach of an express warranty. *See Snyder*, 792 F. Supp. 2d at 722 (explaining that at the motion to dismiss stage, a plaintiff must "provide more than 'bald assertions,' and identify specific affirmations by Defendant that could be found to constitute an express warranty."). Rather, Plaintiff generally relies on the Company's public statements about the efficacy of its products – the specifics of which Plaintiff has not identified – which are likely mere puffery and cannot give rise to an express warranty claim. *See Mendez*, 28 F. Supp. 3d at 295 (dismissing plaintiff's breach of express warranty claim stemming from statements made by defendants' "sale and marketing personnel in literature, on-line and in television or other advertising" because such "statements are general averments and do not allege the specific affirmation, promise or guarantee made by Medtronic regarding the Infuse device."); *New Jersey Citizen Action v. Schering-Plough Corp*, 842 A.2d 174, 177 (N.J. App. Div. 2003) (finding that statements in advertisements such as "you ... can lead a normal nearly symptom-free life again" were merely puffery and not "intended to be understood by consumers as a guarantee of total and universal effectiveness of the product"). Absent additional details regarding the specific promises purportedly made to Plaintiff and her physician, the Court cannot assess the merits of Plaintiff's breach of express warranty claim. Accordingly, Plaintiff's express warranty claim is dismissed. If Plaintiff chooses to file an amended complaint and pursue her express warranty claim, she must specifically identify the specific affirmation, promise, or guarantees Defendant made regarding the Knee System.

### D. Punitive Damages

Defendant also moves to dismiss Plaintiff's claim for punitive damages. Because Plaintiff has failed to allege a cognizable claim under the NJPLA, I need not consider Plaintiff's claim for punitive damages. *See O'Connor v. Harms,* 266 A.2d 605, 609 (N.J. App. Div. 1970) ("punitive or exemplary damages will not be awarded unless there is an independent cause of action for compensatory damages"); *Hindermyer*, 419 F. Supp. 3d at 831 (dismissing plaintiff's claim for punitive damages where plaintiff failed to adequately plead an NJPLA claim); *Karlson v. Dematic Corp.*, No. 16-321, 2016 WL 4487849, at *4, (D.N.J. Aug. 24, 2016) (dismissing a request for punitive damages in a products liability suit, where the plaintiff "failed to state a claim for relief under the NJPLA or common law").

Nonetheless, I briefly note that, to the extent that punitive damages are available under the NJPLA, Plaintiff's claim for punitive damages would also be governed by the New Jersey Punitive Damages Act, N.J. Stat. Ann. §2A:15-5.9. To establish a claim for punitive damages under the statute, a plaintiff must prove, "by clear and convincing evidence, that ... the defendant's acts or omissions ... were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J. Stat. Ann. §2A:15–5.12. "Actual malice" is defined as "an intentional wrongdoing in the sense of an evil-minded act." N.J. Stat. Ann. §2A:15–5.10. "Wanton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id*.

Here, Plaintiff alleges that she "is entitled to an award of punitive and exemplary damages based upon Defendant's intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare" and that "Defendant[] had knowledge of, and [was] in possession of, evidence demonstrating that the [Knee

15

System] was defective, unreasonably dangerous, and had a substantially higher failure rate than did other similar devices on the market." Compl. ¶146. Plaintiff further alleges that "[d]espite [that] knowledge, Defendant[] failed to, among other purposeful acts, inform or warn Plaintiff or Plaintiff's healthcare providers of the dangers, establish and maintain an adequate quality and post-market surveillance system, and recall the Product from the market." *Id*. Aside from that boiler plate language, Plaintiff's Complaint is devoid of any specific factual allegations to support a finding that Defendant acted with malice, or wanton or willful disregard of people who could foreseeably be harmed by Defendant's conduct. *Tafaro,* No. 17-5607, 2018 WL 1535289, at *9 (dismissing plaintiff's claim for punitive damages on NJPLA claim were plaintiff's complaint did not "contain any factual allegations to support a finding that Defendants acted with wanton or willful disregard of persons who could foreseeably be harmed by Defendants' conduct"); *Guardavacarro v. Home Depot,* No. 16-8796, 2017 WL 3393812, at *10 (D.N.J. Aug. 8, 2017) (dismissing plaintiff's claim for punitive damages on NJPLA claim where Plaintiff failed to allege any facts showing that Defendants acted with "actual malice" or "wanton and willful disregard"). Indeed, Plaintiff's formulaic Complaint does not even plead any specific facts regarding Defendant's awareness of the purported defects in the Knee System. If Plaintiff chooses to file an amended complaint and seek punitive damages, Plaintiff must satisfy the standard set forth by the Punitive Damages Act. Plaintiff's claim for punitive damages is dismissed without prejudice.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED.** Plaintiff's claims for fraudulent misrepresentation (Count III), fraudulent concealment (Count IV), negligent misrepresentation (Count V), and unjust enrichment (Count VI) are dismissed with prejudice as subsumed by the NJPLA. Plaintiff's NJPLA claims (Count I), breach of the express warranty claim (Count II), and punitive damages claim (Count VII) are dismissed without prejudice.

16

Plaintiff is given leave to amend those claims, consistent with this Opinion, within 30 days from the date of the accompanying Order.

Date: May 19, 2021

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge